1

RECEIVED

JUN 1 7 2024

Wendy R Oliver, Clerk
U.S. District Court
W.D. OF TN, Memphis

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| GERALD KINER )<br> Plaintiff, )<br> )<br> )<br>v. )<br> )<br>Shelby County Health Department )<br>and Travis Green, )<br>(in his official capacity and individual capacity) )<br> Defendants. )<br> ) | No.  24-2412 |

COMPLAINT FOR VIOLATIONS OF CIVIL RIGHTS UNDER 42 U.S.C § 1983 AND STATE
WHISTLEBLOWER  PROTECTION LAW

## Introduction

**1. Parties**

  - Plaintiff Pastor Gerald Kiner ("Plaintiff"), a highly reputable contractor and respected member of the community, brings this action pro se against the Shelby County Health Department and Travis Green ("Defendant Green"), a Director of the Shelby County Health Department, for violations of his civil rights under 42 U.S.C. § 1983 and under Tennessee whistleblower protection law.

  - Defendant Shelby County Health Department ("SCHD") is a governmental entity responsible for public health administration in Shelby County, Tennessee.
  - Defendant Travis Green ("Defendant Green") is a high-ranking employee of SC, sued in both his official and individual capacities.

**2. Jurisdiction and Venue**

  - This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343, as this action arises under the Constitution and laws of the United States, specifically 42 U.S.C. § 1983, and under supplemental jurisdiction for state law claims.
  - Venue is proper in this district under 28 U.S.C. § 1391(b) because the events giving rise to this claim occurred in Shelby County, Tennessee.

## Facts

3. On June 11, 2024, at a public Shelby County Commissioner meeting attended by the media, the listening audience, commissioners responsible for voting on contractor awards, and an online audience, Plaintiff Pastor Gerald Kiner delivered a speech.

4. Plaintiff's speech included accurate and critical observations regarding the Shelby County Health Department's process for awarding contracts to various vendors.

5. Plaintiff stated, "I come before you today deeply concerned about the recent decision to award the violence prevention and intervention contract."

6. Plaintiff stated, "The Daughters of Zion, a local minority organization, submitted the lowest bid and proposed a comprehensive plan with a wider reach than our competitors, yet we were overlooked in favor of three other organizations."

7. Plaintiff stated, "There is Zero minority local spend dealing with a nearly 100% at-risk local minority issue."

8. Plaintiff stated, "The first recipient, Lebonheur Hospital, offered a treatment plan, not an intervention strategy. Their proposal focuses on treating youth who have already committed crimes, failing to address the crucial need for proactive community intervention."

9. Plaintiff stated, "The second organization, Youth Village, is another non-minority entity. Despite their experience, their proposal did not demonstrate the depth of community integration necessary for effective violence prevention."

10. Plaintiff stated, "The third awardee is a non-local minority organization from Nashville. Shockingly, they did not submit the mandatory paperwork in their proposal, yet they were still selected over us."

11. Plaintiff stated, "It's important to highlight that the seven reviewers were all employees of the Shelby County Government. The near-identical bids from these three organizations suggest an alarming level of favoritism and potential insider knowledge regarding the allocated funds."

12. Plaintiff stated, "This scenario not only raises questions about the fairness of the process but also highlights the systemic issues minority organizations face in securing such contracts."

13. Plaintiff stated, "Commissioner Thornton has previously expressed confusion about why minority organizations are consistently left out of these opportunities. The answer lies in the very process we witnessed here – a process marred by favoritism and a lack of transparency."

14. Plaintiff stated, "To achieve true justice and equity in contract awarding, we must have independent reviewers with no ties to the county government."

15. Plaintiff stated, "This flawed process not only undermines trust in our local government but also poses serious legal risks."

16. Plaintiff stated, "The apparent favoritism and lack of transparency could lead to legal challenges based on discrimination and procedural violations."

17. Plaintiff stated, "If these issues are not addressed, the county could face lawsuits alleging biased practices in the awarding of contracts, potentially resulting in costly settlements and a tarnished public image."

18. Plaintiff stated, "Moreover, the failure to adhere to mandatory proposal requirements, as evidenced by the acceptance of an incomplete bid, further exposes the county to legal scrutiny."

19. Plaintiff stated, "Such actions could be construed as a breach of procurement regulations, leading to potential investigations and sanctions."

20. Plaintiff stated, "The Daughters of Zion deserve a fair chance to contribute to our community's safety and well-being."

21. Plaintiff stated, "We need a contracting process that is transparent, equitable, and free from bias."

22. Plaintiff stated, "Only then can we ensure that every organization, regardless of background, is judged on the merits of their proposals and their potential impact on our community."

23. Immediately following Plaintiff's speech, Defendant Green publicly declared, "everything that was said was a lie," (see EXHIBIT A) in a manner that was both reckless and grossly negligent, with full awareness of the potential damage to Plaintiff's reputation and credibility.

24. During Plaintiff's speech, Defendant Green falsely denied that a third vendor was awarded a contract, despite the truth of Plaintiff's statements, demonstrating that it was Defendant Green who appeared to have lied, not Plaintiff.

25. Defendant Green's statement was defamatory, constituting slander, as it falsely accused Plaintiff of lying, thereby damaging his reputation and causing severe emotional turmoil.

26. Defendant Green's statement was made with malicious intent or reckless indifference to the truth, demonstrating a willful disregard for Plaintiff's rights and the potential harm to Plaintiff's reputation and business interests.

27. Defendant Green, as a high-paid and high-ranking official of the Shelby County Health Department, frequently represents SCHD before the Shelby County Commission. As such, he is expected to be well-trained and professional, avoiding intimidation tactics and defamatory statements. His failure to adhere to these standards reflects directly on the Shelby County Health Department.

28. The Shelby County Health Department, as Defendant Green's employer and the entity responsible for his training and oversight, bears liability for his actions, particularly as they were undertaken within the scope of his official duties and with the apparent authority of the department.

## Causes of Action

### Count I: Violation of First Amendment Rights Under 42 U.S.C. § 1983

29. Plaintiff re-alleges and incorporates by reference the allegations in the preceding paragraphs.

30. The circumstances herein satisfy the legal requisites for entitling the Plaintiff to redress under the doctrine of First Amendment Retaliation, mirroring the jurisprudence established in Thaddeus-X v. Blatter, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).

31. Plaintiff's speech at the public meeting was protected by the First Amendment as it addressed matters of public concern.

32. Defendant Green's statement constituted an adverse action taken in retaliation for Plaintiff's protected speech, with the intent to chill Plaintiff's exercise of his First Amendment rights.

33. . The force and anger in Defendant Green's voice as he made his statement shocked Plaintiff, making him feel threatened, intimidated, and silenced out of fear of being defamed and humiliated again.

34. Defendant Green's conduct, in his official capacity as a representative of the SCHD, violated Plaintiff's First Amendment rights.

35. The adverse action taken by Defendant Green would deter a person of ordinary firmness from engaging in protected conduct, thereby satisfying the criteria established in Thaddeus-X v. Blatter, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).

36. Defendant Green was motivated, at least in part, to take the adverse action because of Plaintiff's protected conduct, satisfying the final element of a First Amendment retaliation claim.

Count II: Violation of Due Process Under the Fourteenth Amendment and 42 U.S.C. § 1983

37. Plaintiff re-alleges and incorporates by reference the allegations in the preceding paragraphs.

38. Defendant Green's defamatory statement, combined with the resulting harm to Plaintiff's reputation and business interests, deprived Plaintiff of his liberty interest without due process of law.

39. Defendant Green's conduct was undertaken with reckless indifference to Plaintiff's rights, violating the procedural due process protections guaranteed by the Fourteenth Amendment.

### Count III: Defamation (Slander) Under Tennessee Law

40. Plaintiff re-alleges and incorporates by reference the allegations in the preceding paragraphs.

41. Defendant Green's statement, made with malicious intent or reckless disregard for the truth, was defamatory per se, as it falsely accused Plaintiff of dishonesty in a public forum.

42. As a direct and proximate result of Defendant Green's defamatory statement, Plaintiff has suffered significant reputational damage, emotional distress, and economic harm, including but not limited to the loss of business opportunities and a diminished standing in the community, all of which will be proven at a trial on the merits.

**Count IV: Violation of Tennessee Whistleblower Protection Law**

43. Plaintiff re-alleges and incorporates by reference the allegations in the preceding paragraphs.

44. Not only did Defendant Green's slanderous statement declare "everything that was said was a lie," but he also asserted, "individuals who make statements like this should be held accountable." Now, it is Defendant Green who must be held accountable for making such defamatory statements. Plaintiff's speech at the public meeting included whistleblowing activity, exposing potential misconduct and mismanagement in the contract awarding process of the Shelby County Health Department.

45. Defendant Green's retaliatory statement constituted a violation of Tennessee whistleblower protection law.

# Relief Sought

Wherefore, Plaintiff Pastor Gerald Kiner requests that this Court:

A. Declare that the actions of Defendant Green, in his official and individual capacities, violated Plaintiff's rights under the First and Fourteenth Amendments of the United States Constitution.

B. Declare that the actions of Defendant Green and the Shelby County Health Department violated Tennessee whistleblower protection law.

C. Plaintiff seeking damages of no less than $10,000,000 but an amount ultimately to be proven at trial, including but not limited to:

D. Award Plaintiff compensatory damages for the harm suffered, including damage to his reputation, emotional distress, and economic loss, against both Defendant Green and the Shelby County Health Department.

F. Award Plaintiff punitive damages against Defendant Green in his individual capacity for his egregious conduct and reckless indifference to Plaintiff's rights.

G. Award Plaintiff for anticipated future economic damages resulting from the retaliation, defamation, and humiliation caused by the Defendant's actions. The Plaintiff requests compensation for economic losses expected to occur in the future, including but not limited to lost earnings, future medical expenses, and other financial losses]. The Plaintiff reserves the right to amend this claim to include the actual amount of economic damages once they have been realized.

H. Award Plaintiff pre-judgment and post-judgment interest on all damages awarded, as permitted by law.

I. In the event an attorney is added by the plaintiff, Award Plaintiff reasonable attorney's fees and costs pursuant to 42 U.S

## **Jury Demand**

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

Pastor Gerald Kiner

/s/ _Gerald Kiner_

4400 Hickory Hill Rd
Memphis, TN 38141
(901) 650-7340
geraldkiner@gmail.com
Date: June 13,2023

## CERTIFICATE OF SERVICE

Pursuant to Tennessee Rule of Civil Procedure 5.02(2), the undersigned certifies that a true and correct copy of the Complaint for Violations of Civil Rights Under 42 U.S.C § 1983 and State Whistleblower Protection Law (6 pages) has been served via First class U.S. Mail on all counsel of record on this afternoon 14th day of June 2024. If you did not receive this document please contact the sender immediately to receive an electronic or physical copy of this document:

Shelby County Health Department
814 Jefferson Avenue
Memphis, TN 38105

Travis Green
Deputy Division Director
Shelby County Health Department
814 Jefferson Avenue
Memphis, TN 38105

## EXHIBIT A

Transcripts between Gerald Kiner and Travis Green
at the Shelby County Commissioner Meeting on June 12,2024

#1

00:00:00 Gerald Kiner:
Thank you so much again.

00:00:00 Gerald Kiner:
Gerald Kiner 4400 Hickory Hill Road, Memphis, Tennessee 3141.

00:00:07 Gerald Kiner:
I just want to read what I have to make sure that I cover everything I come before you today deeply concerned about the recent decision to award the violence prevention and intervention the contract.

00:00:18 Gerald Kiner:
The Daughters of Zion, a local minority organization, submitted the lowest bid and proposed a comprehensive plan with a rider reach than our competitors.

00:00:27 Gerald Kiner:
Yet we were overlooked in favor of three other organizations.

00:00:31 Gerald Kiner:
There is zero minority local spend dealing with a nearly 100% at risk local minority issue.

00:00:37 Gerald Kiner:
The first recipient, Lebonheur Hospital, offered a treatment plan, not an intervention strategy.

00:00:41 Gerald Kiner:
The proposal focused on treating youth who have already committed crimes, failing to address the crucial need for proactive community intervention.

00:00:49 Gerald Kiner:
The second organization, Youth Villages, is another non minority entity.

00:00:53 Gerald Kiner:
Despite their experience, their proposal did not demonstrate the depth of community integration necessary to effective prevent violence.

00:01:00 Gerald Kiner:
The third award is a non local minority organization from Nashville.

00:01:04 Gerald Kiner:

00:01:11 Gerald Kiner:
It is important to highlight that the seven reviewers, all employees of Shelby county government, the near identical bids from these organizations.

00:01:19 Gerald Kiner:
These three organizations suggest an alarming level of favoritism and potential insider knowledge regarding the allocation of funds, which we tried to find out what the grant funds were for, how much.

00:01:31 Gerald Kiner:
We were never told that amount, but it appears that these three organizations knew because their bid was very identical.

00:01:37 Gerald Kiner:
This scenario not only raises questions about the fairness of the process, but also highlights the systematic issues minority organizations face in securing such contracts.

00:01:47 Gerald Kiner:
Commissioner Thornton has previously expressed confusion about why minority organizations are constantly left out of these opportunities.

00:01:54 Gerald Kiner:
The answer lies in the very process we witness here, a process marred by favoritism and a lack of transparency.

00:02:01 Gerald Kiner:
To achieve true justice and equity and contract awarding, we must have independent reviewers with no ties to the county government.

00:02:07 Gerald Kiner:
This flawed process not only undermines trust in our local government, but also possesses serious legal risks.

00:02:14 Gerald Kiner:
The parent favoritism and lack of transparency could lead to legal challenges based upon discrimination and procedure violations.

00:02:21 Gerald Kiner:
If these issues are not addressed, the county could face lawsuits alleging bias practices in awarding of contracts, potentially resulting in costly settlements and attorneys public image.

00:02:31 Gerald Kiner:

Moreover, the failure to adhere to mandatory proposed requirements, as evidenced by the acceptance of an incomplete bid, further exposes the county to legal scrutiny.

00:02:40 Gerald Kiner:
Such actions could be construed as a breach of procurement regulations leading to potential investigation and sanctions.

00:02:47 Gerald Kiner:
The donors of sign deserve a fair chance to contribute to our community's safety and well being.

00:02:52 Gerald Kiner:
We need a contract process that is transparent, equitable and free from bias.

00:02:56 Gerald Kiner:
Only then can we ensure that every organization, regardless of background, is judged on the merits of their proposal and their potential impact to our community.

00:03:04 Gerald Kiner:
I urge you to reevaluate.

00:03:06 Madam_2
Mister Kiner.

00:03:08 Madam_2
That three minutes went by pretty quickly.

00:03:11 Madam_2
All right, I appreciate your public comment.

00:03:14 Madam_2
I do have several commissioners in the queue.

00:03:18 Madam_2
Mister Green, do you want to have an opportunity to respond at this point, or do you want to hear the commissioners first?

00:03:24 SPK_1
I can respond.

00:03:25 Madam_2
Yes, sir.

00:03:26 SPK_1
Travis Green.

00:03:27 SPK_1
Address: 814 Jefferson Avenue.

00:03:33 SPK_1
Everything that was said is a lie.

00:03:34 SPK_1
That's one and two.

00:03:37 SPK_1
I believe that the last source of funding that we awarded, we just awarded solicitation to the individual to my left last week.

00:03:47 SPK_1
The idea of colluding with community partners is unfair and unjust.

00:03:52 SPK_1
And I categorically object to that.

00:03:58 SPK_1
Imputing the reputation of our colleagues.

00:04:02 SPK_1
The first round of funding he was awarded, the second round he was not.

00:04:06 SPK_1
And the mere fact of not being awarded funding and to say all those things is unfair and unjust.

00:04:12 SPK_1
And so one of the things I will say to this body is that as a presenter, I do not sit on the committee to score.

00:04:21 SPK_1
Our evaluators are independent, not associated with any one particular program, and they are professionals and they are good people.

00:04:31 SPK_1
And what I will say is that this is grant funding.

00:04:36 SPK_1
Whenever there's an allegation like this, I would say we should pause and ask for an independent audit.

00:04:42 SPK_1
And individuals who make statements like this should be held accountable.

00:04:46 SPK_1
And so I will pause here for any comments, questions, reporting commission.

00:04:50 SPK_1
Thank you.

00:04:51 Madam_2
Thank you, Mister Green.

00:04:51 Madam_2
We have several commissioners that are in queue, so I will start with commissioner Brooks.

00:04:55 Madam_2
And thank you, ma'am.

00:04:58 SPK_4
Thank Madam chair lady.

00:05:00 SPK_4
I will be brief.

00:05:01 SPK_4
I was hoping that you would have some of your vendors here, because I do have some questions.

00:05:10 SPK_4
I read all of these documents and quite frankly, well.


#2

00:00:00 SPK_4
I read all of these documents, and quite frankly, well, they appear to be duplicative.

00:00:12 SPK_4
So I do have some questions in.

00:00:14 SPK_4
Reference to how they're going to do.

00:00:16 SPK_4
This work and some other questions.

00:00:18 SPK_4
So can you have them here on Monday?

00:00:20 SPK_4
You get to look methodist people.

00:00:23 SPK_4
Who else?

00:00:24 SPK_4
Youth villages.

00:00:28 SPK_3
Those are called the two vendors.

00:00:30 SPK_3
Methodists and youth villages.

00:00:32 SPK_4
Well, now you have some others.

00:00:36 SPK_3
We belive. Yes, ma'am.

00:00:37 SPK_3
The board of commission.

00:00:38 SPK_3
Today we have youth villages before us, as well as Lebonheur, Lebonheur Hospital.

00:00:43 SPK_4
Those two are only two awardees.

00:00:46 SPK_3
On today's agenda. Yes, ma'am.

00:00:47 SPK_3
Okay, there are two items.

00:00:50 SPK_4
Well, I'll let that be for now.

00:00:51 SPK_4
I'll go back into this and see what I got to abuse them.

00:00:54 SPK_4
Thank you.

00:00:55 SPK_4
But you will have up here Monday.

00:00:57 Commissioner Caswell:
Yes, sir.

00:00:58 SPK_1
Thank you.

00:00:58 Commissioner Caswell:
Yes, sir.

00:00:59 SPK_3
All right.

00:00:59 SPK_2
Thank you, Commissioner Brooks and Commissioner Caswell.

00:01:02 Commissioner Caswell:
I just wanted to say for the record, for this item, in the second item, I'm recusing myself because of some curve island work I do.

00:01:11 Commissioner Caswell:
I believe it might intertwine with some of these organizations.

00:01:14 Commissioner Caswell:
Thank you.

00:01:15 SPK_2
Thank you, Commissioner Caswell, Commissioner Thornton.

00:01:25 SPK_2
Thank you.

00:01:26 SPK_2
I want to thank.

00:01:31 SPK_2
Hello.

00:01:32 SPK_2
Okay.

00:01:33 SPK_2
I want to thank Doctor Kiner, because you're brilliant in a very unique way at really pushing process.

00:01:41 SPK_2
And so I just know that you spend a lot of time at the meetings, and it's easy for you just to become just a voice that is silenced.

00:01:50 SPK_2
But I appreciate you for trying and really learning these processes to be competitive.

00:01:56 SPK_2
My challenge with this particular allocation to youth villages is the fact that youth villages was said recently to be the only organization at the state level that could qualify for funds.

00:02:09 SPK_2
So when I look at this particular item and I look at the summary sheet, and I see how many competitors there were, or people who were directly solicited.

00:02:19 SPK_2
You had a candidate pool with 15 black males, 14 of which were local, twelve others, ten of which were local, 19 black females, 17 of which were local.

00:02:31 SPK_2
And then you come down here and you see that this particular item and the others, the three vendors, you say, are one black male non local, one white male local, one other local.

00:02:46 SPK_2
The issue that we're talking about is clearly one that is directly impacting primarily black children and their families.

00:02:54 SPK_2
We can open that up to, say, black and brown.

00:02:56 SPK_2
So why would we approve some type of intervention to pass through an organization that is a white male organization?

00:03:06 SPK_2
It just seems insulting to me.

00:03:08 SPK_2
I would much rather respect, because you said with youth villages that I should not die, but live.

00:03:13 SPK_2
And I saw those other organizations that came that were subcontractors. At some point we have to build local capacity for local organizations because they do exist.

00:03:22 SPK_2
Youth villagers does not need to be the recipient of this.

00:03:25 SPK_2
One of their particular groups needs to be able to stand before its own work.

00:03:30 SPK_2
Because let's be honest, nobody up in youth villages suite is out here doing this work.

00:03:36 SPK_2
You're going, you're scrubbing neighborhoods, finding organizations, and you're making 100% of their budgets come through the awards from youth villages when you could be building capacity for local organizations to get them to be able to be the awardees.

00:03:51 SPK_2
I do not believe that this needs to be voted in favor by this body.

00:03:57 SPK_2
And I do think that we need to put this out to be able to get some of these 15 black males, 19 black females, and even some of the others to be able to be in position.

00:04:07 SPK_2
I just, youth villages has an unfair competitive advantage that we have to be able to build local capacity.

00:04:14 SPK_2
I don't see that with this particular item.

00:04:17 SPK_3
Madam chair.

00:04:18 SPK_2
Yes, sir.

00:04:19 SPK_2
Mister Green.

00:04:19 SPK_3
Yes, ma'am.

00:04:20 SPK_3
Travis Green.

00:04:20 SPK_3
Address, 814 Jefferson Avenue.

00:04:23 SPK_3
I thank you for your comment.

00:04:26 SPK_3
I would agree with you that youth Villages is a very large organization and they submitted a competitive application and so.

#3

00:00:00 Mister Green
Track screen address, 814 Jefferson Avenue.

00:00:03 Mister Green
I thank you for your comment, Commissioner Thornton .

00:00:06 Mister Green
I would agree with you that youth villages is a very large organization and they submitted a competitive application.

00:00:14 Mister Green
And so our colleagues who scored this on the scoring committee were.

00:00:20 SPK_2
Mister Green, if you.

00:00:22 SPK_2
Yeah, thank you.

00:00:23 Mister Green
Our colleagues who scored this were only able to look at the response from what was submitted, not factored in race or anything else.

00:00:31 Mister Green
Maybe two weeks ago, I believe two or three weeks ago, we awarded Mister Gerald Kiner an award from a different pot of money for community violence intervention.

00:00:40 Mister Green
This is the second round of funding, and so there was no discrimination.

00:00:44 Mister Green
If there was discrimination, he would not have been awarded the first round of funding.

00:00:48 Mister Green
I believe everything that you said, Commissioner Thornton, about the capacity to expand and build upon community based organizations.

00:00:56 Mister Green
I believe a couple of hours ago, because we've been here since early this morning, Commissioner Avent made a proposal about capacity and looking for funding from ARPA, about doing that capacity work.

00:01:07 Mister Green
This funding is not for that.

00:01:08 Mister Green
This funding is for community violence intervention.

00:01:11 Mister Green
And I commend Commissioner Avent for her effort in expanding the capacity and building that strengthen our community.

00:01:18 Mister Green
And we stand 100% in support of that effort.

00:01:21 Mister Green
But today, what we hear to discuss is community violence and violence intervention in the scorecard and the criteria that we set forth in the RFP is what we have to abide by.

00:01:30 Mister Green
If you have a recommendation on how we can exclude or carve out certain organizations not to be competitive, I would be welcoming you and to hear what legal has to say about that.

00:01:41 Mister Green
And we will comply with that.

00:01:43 Mister Green

But until that point, we abide by all of the rules that the county set forth and put us in front, put us, put in front of us.

00:01:50 Mister Green
And so if there is a question about integrity, of whether or not we did this, call in the question that we awarded him two weeks ago, we wouldn't like that.

00:01:58 Mister Green
But I would recommend we vote on this item that the board of commissioners here today also say, can we ask for an independent audit?

00:02:06 Mister Green
And whether or not, if the health department followed the rules and abide by that, pass this today, but also make a motion to ask for internal audit, to do an audit on blenders, vote to see whether or not we abide by those rules.

00:02:20 Mister Green
And I think that will fully address that.

00:02:22 Mister Green
But people do not have a chance, an opportunity to come here and make baseless accusations and then to say, because I was not awarded, I'm hurt.

00:02:32 Mister Green
And I'll pause here.

00:02:34 Mister Green
Thank you.

00:02:34 SPK_2
Thank you, Mister Green.

00:02:35 SPK_2
But so I voted Commissioner Advent, before my comments.

00:02:42 SPK_3
Yes, I agree that we definitely should think about the folks who are providing some of that on the ground work.

00:02:51 SPK_3
And so my question is, are there organizations or sub grantees of these two that are providing some of this work as part of the youth violence mission.

00:03:01 Mister Green

Youth villages outlined that they would have allyships or partnerships.

00:03:05 Mister Green
The funding that they put in their budget is for positions, but they did reference a number of partnerships.

00:03:11 Mister Green
And so funding, based upon my review is not allocated to subrecipients.

00:03:17 Mister Green
It is primarily positions that they plan on adding.

00:03:21 SPK_3
So I agree with Commissioner Thornton about having capacity for the folks who are really.

#4

00:00:00 SPK_3
Definitely should think about the folks who are providing some of that on the ground work.

00:00:05 SPK_3
And so my question is, are there organizations or sub grantees of these two that are providing some of this work?

00:00:13 SPK_3
As part of the youth Violence Initiative.

00:00:15 Gerald Kiner
Youth villages outlined that they would have allyships or partnerships.

00:00:19 Gerald Kiner
The funding that they put in their budget is for positions, but they did reference a number of partnerships.

00:00:25 Gerald Kiner
And so funding, based upon my review, is not allocated to subrecipients.

00:00:30 Gerald Kiner
It is primarily positions that they plan on adding.

00:00:34 SPK_3
So I agree with Commissioner Thornton about having capacity for the folks who are really deeply embedded in those neighborhoods to really be able to do that work and do it well.

00:00:48 SPK_3
I disagree with Mister Green and that we do see you at every meeting and know that you're a huge advocate.

00:00:56 SPK_3
I don't know the daughters of Zion can do every single aspect of every work that comes before the commission, but I do think that there's a niche for what you do and what others do.

00:01:06 SPK_3
There may be other organizations that also could be a part of this pool of grant funds.

00:01:13 SPK_3
And I mean, there's a, there's a list of them that we know are working, working well in the community.

00:01:18 SPK_3
And if there are some that youth villages has named in this proposal, I would like to see how there is an opportunity to build capacity specifically.

00:01:29 SPK_3
And I don't know if the grant itself talks about.

00:01:35 SPK_3
That.

00:01:35 SPK_1
who has to be some aspect of community based organizations, because if you're just doing the positions and you really are not building capacity for the organizations who are usually deeply embedded in these communities to really do the work.

00:01:48 SPK_3
So I don't know the detail.

00:01:49 SPK_3
I haven't looked at this one in as much detail as all the others.

00:01:53 SPK_3
So I'm not as well versed on whether there is any stipulation for that.

00:02:00 Mister Green
Draft screen address 814 Jackson Avenue.

00:02:03 Mister Green
The majority of the grants that we have at the health department does not require that.

00:02:08 Mister Green
One of the things that the board of commissioners could do moving forward is to say with general fund dollars are awarded, that that is a requirement and make that a part of the scoring.

00:02:17 Mister Green
And that could be something that could be helpful.

00:02:19 Mister Green
But when we are talking about federal and state funding and pass through funding, we have to abide by the manuals and protocols that's associated with that.

00:02:27 Mister Green
But that is something that we could do moving forward in general fund dollars that when they're appropriated, we can add that as a part of the criteria area of funding.

00:02:34 Mister Green
Yes, ma'am.

00:02:35 Mister Green
Thank you.

00:02:37 SPK_1
Thank you, commissioner mam.

00:02:38 SPK_3
Abandoned.

00:02:38 SPK_1
Commissioner Brooks.

00:02:39 SPK_3
You back in the queue.

00:02:40 SPK_3
Yes, ma'am.

00:02:42 SPK_3
To my colleague through the chair.

00:02:45 SPK_3
Was that question about subcontracting?

00:02:48 SPK_3

Oh, well, that's not correct.

00:02:50 SPK_3
No.

00:02:51 SPK_3
You can have sub recipient on any project unless it is written in the grant or the RFP prohibiting, specifically prohibiting.

00:03:04 SPK_3
But you can, you can always have a sub recipient or a subcontractor.

00:03:10 SPK_3
In fact, I think that is something that is probably widely accepted on a federal level because it brings in more people and it allows greater compliance with federal, state law, particular federal laws, because you were able to bring in more people.

00:03:28 SPK_3
But that's not my production.

00:03:33 SPK_3
I did find the other group.

00:03:35 SPK_3
It's the Raphah institute.

00:03:37 SPK_3
They got 450 something thousand dollars.

00:03:41 SPK_3
Right.

00:03:42 SPK_3
They're in here.

00:03:44 inaudible
Out of the budget.

00:03:45 SPK_1
It's in here.

00:03:48 SPK_3
You want me to give you the page is not going to.

00:03:52 SPK_3
Wow.

00:03:53 SPK_3
I know, because I've seen them before.

00:03:57 SPK_3
They've been mentioned.

00:03:59 SPK_3
They do.

00:04:02 SPK_3
Anyway, this is the other issue I was kind of concerned about and confused over.

00:04:09 SPK_3
Yeah, here it is.

00:04:09 SPK_3
Raphah Institute.

00:04:11 SPK_3
I can give you their EEOC number.

00:04:13 SPK_3
$459,195.

00:04:19 SPK_3
Youth villages is doing business also as Memphis allies.

00:04:24 SPK_3
So when I was reading through these grant contracts, I got all confused because at one point Patrick Lawley was signing.

00:04:32 SPK_3
Patrick Lawley knew youth villages and then he was signing Memphis allies, and I just, I didn't know who to hold accountable.

00:04:42 SPK_3
So that's why I really need to talk with the people that were awarded this money, so I can know who's, who is it going to be.

00:04:50 SPK_3
I know Memphis allies was created by youth villages.

00:04:54 SPK_3
However, in the contracts, we need to be consistent so we'll know who's supposed to be doing what.

00:05:04 SPK_3
Youth villages is a big organization that does everything, and they created Memphis allies.

00:05:10 SPK_3
So will Memphis allies do all of the work or will youth villages with all of this many, many, many components be doing some of this work?

00:05:20 SPK_3
And if they are, I'm going to be real concerned because, you know, they have, there has been a child murdered by youth villages.

00:05:33 SPK_3
Now, they haven't been indicted like that, but.

00:05:37 SPK_3
So I guess I need to say recordedly, but the child is dead.

00:05:44 SPK_3
So I'm concerned that Shelby county government, and I'm not sure what kind of position of posture they may be in, were contracting with youth villages.

00:05:53 SPK_3
But that needs, I need to have that sorted out, and I guess legal will have to do that for me.

00:05:58 SPK_3
I really do need to know what posture we're in dealing with youth villages in that situation.